UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
THE NARRAGANSETT ELECTRIC
COMPANY,

                     Plaintiff,                  11 Civ. 8299 (PKC)

       -against-                      MEMORANDUM
                                                             AND ORDER

AMERICAN HOME ASSURANCE
COMPANY, et al.

                     Defendants.
-----------------------------------------------------------------x
P. KEVIN CASTEL, District Judge:

        Defendant Century Indemnity Company ("Century") moves for reconsideration of the Court's February 1, 2013 Memorandum and Order, which granted summary judgment to plaintiff The Narragansett Electric Company ("Narragansett") as to Century's duty to defend an environmental lawsuit brought by the Commonwealth of Massachusetts (the "Commonwealth Action"). Narragansett Elec. Co. v. Am. Home Assur. Co., No. 11 Civ. 8299, __ F. Supp. 2d __, 2013 WL 432610 (S.D.N.Y. Feb. 1, 2013). Century alternatively moves to certify the Memorandum and Order for interlocutory appeal, pursuant to 28 U.S.C. § 1292(b).

        Narragansett's predecessor, a public utility company, contracted at some point between 1930 and 1945 to deposit by-product waste at the Mendon Road Site (the "Site"), a sand and gravel pit in Massachusetts. Id. at *4-5. In its Memorandum and Order, the Court considered whether the Century Primary Policy's pollution exclusion obviated Century's duty to defend Narragansett in the Commonwealth Action. The exclusion provides that the Policy does not cover "bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste

materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental." Id. at *13.

The Court, applying Massachusetts law, determined that "releases occurring over extended periods of time as part of the insured's regular business activities are not sudden and accidental, absent additional facts." Id. at *14. The Court went on to conclude, however, that the Commonwealth Complaint, (Lechliter Decl. Ex. 2 ("Commonwealth Compl.")), was "reasonably susceptible to the interpretation that [a co-defendant's subsequent] residential excavation caused a separate, abrupt and unintentional release by exposing the waste products to the elements," and thus, Century had a duty to defend. 2013 WL 432610 at *16.

For the reasons discussed, the motion for reconsideration is denied, and the motion to certify the Memorandum and Order for interlocutory appeal is denied.

DISCUSSION

I. Motion for Reconsideration

Local Rule 6.3 allows a party to move for reconsideration as to "matters or controlling decisions which counsel believes the Court has overlooked." A motion for reconsideration "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked-matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp. Inc., 70 F.3d 255, 257 (2d Cir. 1995). Reconsideration is also appropriate to "correct a clear error or prevent manifest injustice." Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992).

2

For purposes of Narragansett's duty to defend claim, the allegations in the Commonwealth Complaint must be "'reasonably susceptible' of an interpretation that they state or adumbrate a claim covered by the policy terms . . . ." Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 788 N.E.2d 522, 530 (Mass. 2003) (quoting Continental Cas. Co. v. Gilbane Bldg. Co., 461 N.E.2d 209 (Mass. 1984)). The facts alleged in the underlying complaint and those facts known to the insurer determine the scope of the insurer's duty to defend. Id. The Commonwealth Complaint alleges, *inter alia*, that:

- "In or about 1984, Maurice C. Brunelle excavated a portion of Lot 1C for the purpose of constructing a house foundation. During this excavation, Maurice C. Brunelle uncovered blue sludge that was contaminated with chemical substances." (Commonwealth Compl. ¶ 37.)

- "While conducting excavation on Lot 1C in or about 1984, Maurice C. Brunelle caused hazardous chemicals to be released to the environment." (Id. ¶ 38.)

The Court concluded that the Commonwealth Complaint was "reasonably susceptible of an interpretation that" that a release occurred, due to the 1984 residential excavation, which was both temporally sudden and accidental in nature.[1]

Century urges that this Court should have employed the teachings of Highlands Ins. Co. v. Aerovox, Inc., 676 N.E.2d 801 (Mass. 1997), in determining its duty to defend. Aerovox addressed a duty to indemnify claim and held that once an insurer proves the pollution exclusion applies, the burden shifts to the insured to show 1) contamination was caused by a "sudden and accidental" release and 2) contamination from the purported release was an "appreciable and compensable proportion" of the damages for which it is liable. Id. at 805-07.

---

[1] The Court finds unavailing Century's contention that the alleged residential excavation does not constitute an "accident" because "earth moving activities in 1984 were entirely consistent with the site's prior use as a sand and gravel pit" (also mentioned in the underlying complaint) and therefore, the residential excavation "cannot fall outside the pale of any reasonable long-range expectation." (Def. Mem. at 13.) In order to prove a defendant's duty to defend, the underlying complaint must allege facts which raise a plausible theory for coverage; the insured need not prove that it will ultimately prevail on an indemnity claim.

Notably, Aerovox did not address the duty to defend, which historically has been assessed on the pleadings and not on the actual proof, which, at the pleadings stage, may lie beyond the control of the insured or insurer.

Relying upon Aerovox, Century argues that Narragansett has not met its burden of proving the exception because the Commonwealth Complaint's allegations make plain Narragansett's liability stems principally from decades of depositing its by-product waste at the Site.[2] Thus, liability based on residential excavation is *de minimis* as a matter of law. (Def. Mem. at 23.) True, the appreciable and compensable requirement may be fatal to an indemnity claim. However, the alleged excavation release is explicitly mentioned in the Commonwealth Complaint. Further, the Commonwealth Complaint explains that when one of the waste by-products, ferric ferrocyanide, "comes into contact with air, sunlight and/or an acidic environment, toxic hydrogen cyanide gases are formed." (Commonwealth Compl. ¶ 27.) Thus, the Court concluded that a person of ordinary intelligence could reasonably read the Commonwealth Complaint as alleging a "sudden and accidental" release adequate to qualify for indemnity coverage under Massachusetts law. The duty to defend analysis does not require further inquiry or speculation regarding the veracity of the underlying complaint's factual allegations.

Century also maintains that, as a matter of law, the only relevant release for purposes of examining the exception to the pollution exclusion is the *initial* release of waste into the land. In its Memorandum and Order, the Court concluded that Millipore Corp. v. Travelers Indemnity Co., 115 F.3d 21 (1st Cir. 1997), the only case which appeared to address this issue

---

[2] Century relies primarily on out-of-state case law in asserting the requirements set out in Aerovox also apply in the duty to defend context. (Def. Mem. at 22-23; Def. Reply at 6-7.)

4

under Massachusetts law, was "a good predictor of how the Massachusetts Supreme Judicial Court would rule . . . ." 2013 WL 432610 at *15.

This conclusion, Century asserts, is contrary to Massachusetts state case law as well as opinions nationwide, including those applying New York law.[3] (Def. Mem. at 1.) The deficiency in Century's argument remains the same: it does not point to sources of comparable authoritative weight to Millipore that adequately address this issue under *Massachusetts* law.

In anticipation of oral argument, the Court ordered the parties to be prepared to address "whether Massachusetts case law addresses an insurer's duty to defend based on a 'sudden and accidental' release allegedly caused by the insured's co-defendant in the third-party action." (Docket No. 105.) At oral argument, the Court asked both parties to provide the "best cases" for their respective positions on this issue. Century now asserts, for the first time, that Employers Ins. of Wausau v. George, 673 N.E.2d 572 (Mass. App. Ct. 1996), is "the only Massachusetts appellate decision that directly analyzes" this question. (Def. Mem. at 11.) Neither party cited George in its briefing. George states the question now before the Court but does not answer it.

The *trial* court in George determined the insurer did not have a duty to defend because two intervening events, a fire and spill, "arose out of" earlier nonsudden and nonaccidental waste deposits into a landfill. 673 N.E.2d at 576-77. While the intermediate appellate court noted "considerable support" for this position in the case law of other jurisdictions, in the next sentence it observed "[t]here is also authority to the contrary." Id. at

---

[3] Century apparently argues for the application of New York law, asserting that New York and Massachusetts's interpretations of the "sudden and accidental" pollution exclusion are in accord in all material respects, and "[i]f no conflict exists, the Court is free to apply the law of the forum." (Def. Mem. at 6.) The Court thoroughly considered the choice-of-law issue in its February 1, 2013 Memorandum and Order, which noted that Century did not press its argument that New York law applies. 2013 WL 432610, at *7 n.6. Application of New York law at this juncture would require a threshold conclusion that the states' laws do not conflict. This necessitates consideration of the parties' arguments regarding the Massachusetts case law.

5

577 (collecting cases). Importantly, George acknowledged the lack of "Massachusetts appellate decision[s] directly on point" and that the "scope of Nashua [was] not yet clear." Id. Rather than rendering an "on point" decision, the appellate court affirmed the trial court because the releases at issue were not accidental.[4] Id. Adopting the trial court's position would have obviated the need to consider whether such releases were indeed "sudden" and "accidental," because the releases could not qualify for coverage under any set of facts. Century argues George "does not lose its binding effect because . . . it is arguably dicta." (Def. Mem. at 13.) The problem with George is not that its teachings are dicta. Rather, the problem is that George does not foreshadow how the Massachusetts Supreme Judicial Court will rule: George's teachings are indeterminate. Furthermore, Millipore, decided the year after George, does not cite George in its analysis of a similar issue.[5]

Problematically, several of the cases Century cites consider a subsequent "discharge, dispersal, release or escape" of contaminants indistinct from the resulting property damage (e.g., the gradual migration of waste from a landfill into surrounding areas). For instance, Century cites a 2002 Massachusetts district court opinion for the proposition that "the

---

[4] The release resulting from a "huge volume of water used to extinguish [a] fire" was not accidental because the deputy fire chief was aware the water "would cause contaminants to be leached back to underground water supplies." Id. at 577-78. Likewise, a 1983 leachate spill was caused by an intentional act. Id. at 578. The court in George relied on extrinsic evidence in determining the insurer's duty to defend because the insured claimed these incidents, while not mentioned in the complaint, were known or readily knowable to its insurers. See id. at 575.

[5] Century also annexes an unpublished Massachusetts district court opinion, in which the court concluded the exclusion's "arising out of" language was unambiguous. Therefore, the court precluded coverage for releases caused by a fire because such releases still "arose out of" the initial discharge into the landfill. Hussey Plastics Co., Inc. v. Continental Cas. Co., No. 90-13104-WD, slip. op. at 5-8 (D. Mass. June 17, 1993) ("[T]hose courts that have interpreted the phrase 'arising out of' in the private insurance context have generally been satisfied that X 'arises out of' Y whenever there exists some significant causal connection between X and Y."). The court reasoned "[u]nder the most natural reading of the pollution exclusion clause together with its exception, the polluting event that purportedly triggers the 'sudden and accidental' exception must be the same event that triggers the exclusion in the first instance, not some later event in the causal chain leading to the property damage for which coverage is sought." Id. at 10. The First Circuit was no doubt aware of this opinion when it decided Millipore, which cites Hussey Plastics in a passing remark that a particular environmental site had been the subject of "a great deal of environmental litigation." Millipore, 115 F.3d at 26 n.6. Notably, the First Circuit did not reference nor endorse Hussey Plastics's analysis.

6

First Circuit has held in cases involving chemical leakages from landfills that a 'dispersal, release, or escape' occurred when chemicals were first poured into a landfill rather than when they escaped the landfill and into the surrounding environment—that is to say, when the chemicals were free and uncontained and not merely when they crossed a particular property boundary." Rev-Lyn Contracting Co. v. Am. Home Assur. Co., No. Civ. A. 01–11961–RWZ, 2002 WL 31427000, at *1 (D. Mass. Oct. 28, 2002) (citing Millipore, 115 F.3d at 32-33 & n.18). However, the district court explained in the next sentence, "[t]o hold otherwise 'would eviscerate the important distinction established between . . . damages and . . . discharges.'" Id. (quoting St. Paul Fire & Marine Ins. Co. v. Warwick Dyeing Corp., 26 F.3d 1195, 1204 (1st Cir. 1994)). The present case does not implicate this important concern. The Commonwealth Complaint alleges a separate intervening release – the 1984 excavation – distinct from the property damage it purportedly caused.

In this round of briefing, the parties also include a helpful survey of national "sudden and accidental" case law, from which Century concludes no state's highest court has applied the "sudden and accidental" exception to a release occurring *after* the initial discharge of waste without finding the "sudden and accidental" language is ambiguous.[6] Assuming this is an accurate characterization of the case law in other states, it does not speak to how the Massachusetts Supreme Judicial Court would rule.

Further, it appears that several state appellate courts that conclude the exception is unambiguous have then acknowledged the possibility of "sudden and accidental" releases after the initial depositing of waste. For instance, the court in George, when noting there was also

---

[6] According to Century, courts deeming the exception unambiguous have ascribed a temporal element to the word "sudden," while courts deeming the exception ambiguous have generally construed the phrase "sudden and accidental" more broadly to incorporate "unexpected or unintended" consequences, including subsequent migration of contaminants. The Massachusetts case law considers the pollution exclusion unambiguous and ascribes a temporal meaning to the term "sudden."

7

authority to the contrary, cited a Minnesota appellate court, which concluded the "[t]he triggering event for purposes of determining the applicability of the pollution exclusion clause is the escape of the contaminants from the . . . landfill into the groundwater." Sylvester Bros. Dev. Co. v. Great Cent. Ins. Co., 480 N.W.2d 368, 377 (Minn. Ct. App. 1992). Likewise, a California appellate court, observing the exception was unambiguous, acknowledged the possibility of successive "sudden and accidental" releases. Travelers Cas. & Sur. Co. v. Superior Court, 75 Cal. Rptr. 2d 54, 66 (Cal. Ct. App. 1998) ("This is not to say that environmental contamination damages connected with industrial dumping are automatically barred from coverage under the sudden and accidental exception to the pollution exclusion. An intervening event may occur between the initial 'disposal of waste on the landfill and the actual damage that eventually resulted,' and that intervening event may have been sudden and accidental." (citing Warwick, 26 F.3d at 1204)).[7]

Finally, Century suggests that the Court's Memorandum and Order may reflect a misreading or misunderstanding of the Millipore opinion. (Def. Mem. at 18-19.) The First Circuit's opinion, however cursory, based its conclusion that the insurers had a duty to defend – a "corollary" to its analysis on the duty to indemnify – on an alleged intervening release event at a landfill site.[8] Millipore, 115 F.3d at 35. For the reasons discussed herein and the February 1, 2013 Memorandum and Order, the Court adheres to its prior decision that the First Circuit's decision in Millipore is a good predictor of how the Massachusetts Supreme Judicial Court would rule on this issue.

---

[7] The Court acknowledges that other authorities in these states are open to interpretations that suggest the contrary. E.g., State v. Allstate Ins. Co., 201 P.3d 1147 (Cal. 2009).

[8] The Court also disagrees with Century's assertion that no other court has interpreted Millipore this way. (Def. Mem. at 16, 19.) For instance, Standun, Inc. v. Fireman's Fund Ins. Co., 73 Cal. Rptr. 2d 116 (Cal. Ct. App. 1998), considering which discharge is relevant in a case involving a landfill, cites Millipore in a string cite with the explanatory parenthetical: "applying Massachusetts law; coverage for *subsequent* unexpected and abrupt release of a significant amount of pollutants into environment." Id. at 121 (emphasis added).

II. Interlocutory Appeal

Century, in the alternative, requests that the Court certify its decision for interlocutory appeal, pursuant to 28 U.S.C. § 1292(b). Section 1292(b) states:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals . . . may thereupon, in its discretion, permit an appeal to be taken from such order . . . .

Section 1292(b) "is a rare exception to the final judgment rule that generally prohibits piecemeal appeals." Koehler v. Bank of Bermuda Ltd., 101 F.3d 863, 865 (2d Cir. 1996). "The question of law certified for interlocutory appeal must refer to a pure question of law that the reviewing court could decide quickly and cleanly without having to study the record." Stone v. Patchett, No. 08 Civ. 5171, 2009 WL 1544650, at *2 (S.D.N.Y. June 3, 2009) (quotation marks omitted; citing Century Pac. Inc. v. Hilton Hotels Corp., 574 F. Supp. 2d 369 (S.D.N.Y. 2008), aff'd, 354 Fed. Appx. 496 (2d Cir. 2009)); accord Gottwald v. Jones, No. 11 Civ. 1432, 2011 WL 5289471, at *2 (S.D.N.Y. Nov. 3, 2011).

Because "[i]t is a basic tenet of federal law to delay appellate review until a final judgment has been entered," certification under section 1292(b) is only "reserved for those cases where an intermediate appeal may avoid protracted litigation." Koehler, 101 F.3d at 865-66. Certification under section 1292(b) is to be granted sparingly. Id. at 866 (discussing limited number of section 1292(b) certifications); see also Westwood Pharms., Inc. v. Nat'l Fuel Gas Distribution Corp., 964 F.2d 85, 88-89 (2d Cir. 1992) ("urg[ing] the district courts to exercise great care in making a § 1292(b) certification" while observing that few interlocutory appeals materially advanced litigation). "The institutional efficiency of the federal court system is a

9

chief concern underlying § 1292(b), and the Court of Appeals has repeatedly emphasized that a district court is to exercise great care in making a § 1292(b) certification." In re Adelphia Commc'ns Corp., 2008 WL 5453738, at *1 (S.D.N.Y. Dec. 31, 2008) (Koeltl, J.) (quotation marks and internal citations omitted).

The Court is of the opinion that an interlocutory appeal would not materially advance the termination of this particular litigation. The threshold choice-of-law issue, which is addressed in the same February 1, 2013 Memorandum and Order, is fact-bound and therefore requires the Circuit's consideration of the underlying record. There is no compelling reason why the Court of Appeals could not effectively consider all of Century's argument on an appeal from a final judgment as to all parties.

For these reasons, certification for interlocutory appeal would be an imprudent exercise of the Court's discretion.

## CONCLUSION

Despite the breadth of Century's arguments and the volume of its briefing, the issue of Century's duty to defend comes down to a few simple propositions. Its insured was named in the Commonwealth's 1987 Complaint which alleged liability from releases of hazardous material from the Mendon Road Site, which had been deposited by the insured's contractor. The Commonwealth, and not the insured, determined the scope of the claim which is then to be measured against the policy and its exclusion. The Commonwealth sought to impose CERCLA liability on the insured because "[w]hile conducting excavation on Lot 1C in or about 1984, Maurice C. Brunelle caused hazardous chemicals to be released to the environment." (Commonwealth Compl. ¶ 38.) A fair reading is that it alleges a release that is temporally "sudden" in that it occurred at a fixed point in 1984 and "accidental" in the sense that it was an

10

unexpected and unintentional consequence of excavation occurring outside the insured's regular business activities and the Site's function as a sand and gravel pit. According to the Commonwealth, the hazardous material included ferric ferrocynanide which, when it "comes in contact with air, sunlight and/or an acidic environment, toxic hydrogen cyanide gases are formed." (Id. ¶ 27.) When the insured sought coverage for the defense of this action, it became the insurer's duty to provide the costs of that defense. Consistent with its obligation to the insured, it would have been appropriate to learn more about the cause and effect of the alleged 1984 release during the course of pretrial discovery in the Commonwealth Action. Perhaps the information would have supported one or more of the propositions that Century now advances. Instead, Century sat on the sidelines and the Commonwealth suit has ended. Century now owes Narragansett the costs of the defense.

The motion for reconsideration (Docket No. 112) is DENIED. The motion for certification pursuant to 28 U.S.C. § 1292(b) is also DENIED.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
April 1, 2013

11