UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                        :
THE NARRAGANSETT ELECTRIC        :
COMPANY,
                       Plaintiff,     :           11 Civ. 08299 (LGS)
                                          :
             -against-              :           OPINION & ORDER
                                          :
AMERICAN HOME ASSURANCE COMPANY, :
et al.,
                       Defendants.  :
                                          :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

       Plaintiff Narragansett Electric Company ("Narragansett") moves for Summary Judgment

as to its Second Claim for relief, seeking damages for Defendant Century Indemnity Company's

("Century") breach of its duty to defend.  Defendant Century cross-moves for Summary

Judgment as to Plaintiff's First and Second Claims for relief.  Plaintiff's and Century's

respective motions to dismiss are granted in part and denied in part.

**I.  Background and Facts**

       What remains of this action is an effort by Narragansett to recoup its defense costs from

Century under a primary general liability insurance policy for the period January 1, 1985 through

January 1, 1986, issued by a predecessor of Defendant Century to a predecessor of Plaintiff

Narragansett.  The policy provided liability coverage for property damage.  The policy contained

a "duty to defend" provision and a "pollution exclusion" that are at the heart of this litigation.

Although Century had a duty to defend under the policy, it declined to do so and did not

participate in the defense of the underlying action.  Narragansett incurred $5,541,705 in defense

costs over the course of twenty years, which it now seeks to recover on this motion.

**A.  The Underlying Litigation**

In 1987, the Commonwealth of Massachusetts filed a complaint against Narragansett's predecessor, the Blackstone Valley Electric Company ("Blackstone"), alleging that Blackstone was jointly and severally liable under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") for costs incurred by Massachusetts in its investigation and clean up of a hazardous waste site located in Attleboro, Massachusetts called the Mendon Road site.

In 1991, the District Court for the District of Massachusetts granted partial summary judgment for the state, finding that ferric ferrocyanide ("FFC") qualified as a hazardous substance under CERCLA.  In 1994, that District Court granted judgment in favor of the state in the amount of $5,875,864.03, which Blackstone placed in escrow.  Blackstone appealed the judgment to the United States Court of Appeals for the First Circuit.  In 1995, the First Circuit vacated the District Court's judgment, and remanded with instructions to refer the matter to the Environmental Protection Agency ("EPA") for an administrative determination regarding FFC's status as a "hazardous substance" under CERCLA.  (56.1 ¶ 6).

On January 18, 2001, the EPA issued its Preliminary Agency Decision, concluding that FFC is a hazardous substance.  On September 13, 2001, Narragansett, as Blackstone's successor, filed suit against the EPA in the United States District Court for the District of Columbia seeking, pursuant to the Freedom of Information Act, documents relevant to Narragansett's defense that had been withheld in the litigation by the EPA.  On September 27, 2003, the EPA issued its final decision concluding that FFC is a hazardous substance under CERCLA.

Narragansett then appealed the EPA's decision to the First Circuit, which held that it did not have jurisdiction, and transferred the matter back to the District Court.  Finally, on October

12, 2006, the D.C. District Court entered a final consent decree.  Pursuant to the consent decree, the escrow account, which had increased in value, was to be closed with sixty percent of the escrow funds distributed to the Commonwealth and forty percent of the funds distributed to Narragansett.  In total, Massachusetts received $5,013,046.  Narragansett received $3,342,031.

In 1994, parallel to the Massachusetts litigation, Blackstone filed a contribution action against Stone & Webster, seeking contribution for damages at the Mendon Road site.  Stone & Webster were management consultants that directed waste disposal at the Mendon Road site for Valley Gas Company, which Blackstone alleged contributed to its liability in the Massachusetts action.  The contribution action was stayed in 1995.  In 2000, Stone & Webster filed for bankruptcy.  Narragansett, as Blackstone's successor, filed a proof of claim in that action.  Pursuant to bankruptcy law, Narragansett was required to make all claims it might potentially have against Stone & Webster or forfeit them.  In 2004, Narragansett settled its claims with Stone & Webster with respect to eight environmental sites, one of which was the Mendon Road site.

**B.  The Current Litigation**

Plaintiff brought this action in November 2011, and filed its Amended Complaint in March 2012.  Relevant here are Plaintiff's first three claims, all regarding Century's duty to defend.  They seek respectively a declaratory judgment, damages for breach of contract, and damages for bad faith failure to perform.  Plaintiff's remaining claims, which have since been settled, were against Century and the excess carriers regarding their indemnification obligations.

On February 1, 2013, in response to various pre-answer motions filed by the parties, Judge Castel held that Massachusetts law governs the Century policy, and that Century had a duty to defend Narragansett in the underlying action because the "pollution exclusion" does not

apply.   He granted Plaintiff's summary judgment motion on the declaratory judgment claim and denied Defendant's motions to dismiss and for summary judgment on Counts I through V.  921 F.Supp. 2d 166 (S.D.N.Y. 2013).  On April 1, 2013, Judge Castel denied Defendant's motion for reconsideration.

On February 15, 2013, after Judge Castel first held that Century had a duty to defend, Defendant answered the Amended Complaint asserting, *inter alia,* the affirmative defense that the statute of limitations had expired. The case was transferred to this Court on April 3, 2013.

Plaintiff now seeks to enforce Judge Castel's ruling and moves for partial summary judgment on Count II, its damages claim as to the duty to defend.  Defendant cross moves for summary judgment on that claim, and renews its motion for summary judgment on Count I, the declaratory judgment claim, this time (i) raising its statute of limitations affirmative defense, (ii) urging a pro rata allocation of defense costs among the insurers, and (iii) arguing to limit the scope of its defense obligation.

## II.  Legal Standard

The standard for summary judgment is well established.  Summary judgment is appropriate only where the record before the Court establishes that there is no "genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute as to a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The Court must construe the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in the nonmoving party's favor.  *See Id.* at 255.

### III.  Discussion

### A.  Procedural Bar to Raising Statute of Limitations Argument

Defendant Century raises a statute of limitations defense and argues that Counts I and II are time barred under Rhode Island's statute of limitations and New York's borrowing statute. Because an action for breach of the duty to defend does not accrue until final judgment in the underlying litigation pursuant to Rhode Island law, Plaintiff's claims are timely.

Plaintiff argues that Judge Castel's decision finding that Century had a duty to defend is law of the case and should not be reconsidered.  The law of the case doctrine is not binding, but "counsels a court against revisiting its prior rulings in subsequent stages of the same case" unless it has "cogent and compelling reasons" to do so or reconsideration is necessary to "correct a clear error or prevent manifest injustice."  *Ali v. Mukasey*, 529 F.3d 478, 490 (2d Cir. 2008) (internal quotation marks omitted).

Defendant cites, *inter alia*, *Santos v. Dist. Council of New York City*, to argue that it did not need to raise its statute of limitations defense on a pre-answer motion for summary judgment. 619 F.2d 963, 967 (2d Cir. 1980) ("The statute of limitations defense need not be raised in a pre-answer motion.  Rather, under Fed. R. Civ. P. 8(c), the statute of limitations constitutes an affirmative defense, to be asserted in a responsive pleading."); *see also Strauss v. Douglas Aircraft Co.*, 404 F.2d 1152, 1155 (2d Cir. 1968) ("[T]he party wishing to raise the defense is obliged to plead the Statute of Limitations at the earliest possible moment.").

Defendant correctly notes that the statute of limitations defense need not be asserted in a pre-answer motion made by a defendant in order to be preserved.  *See* Fed. R. Civ. P. 12(b) (specifying defenses that must be made before pleading if a responsive pleading is required). Neither the rule nor the existing case law is helpful in addressing whether the Defendant here

was required to raise an affirmative defense in response to Plaintiff's pre-answer Motion for Summary Judgment.

Justice requires consideration of Defendant's statute of limitations defense. The Defendant does not appear to have been purposefully dilatory in asserting its defense. *See Strauss*, 404 F.2d at 1155-56 (analyzing whether leave should be given to amend an answer to assert the statute of limitations defense, and noting that if the "defense lurks in the case, vacillation can cause the other party irreparable injury"). The Defendant raised its statute of limitations defense in its Answer. There is no case law or rule mandating that the Defendant raise its affirmative defenses in response to Plaintiff's motion. Because Defendant raised the statute of limitations as soon as required under the Federal Rules of Civil Procedure, it would be unfair not to consider a potentially meritorious defense when there is no evidence of prejudice to the Plaintiff.

## B. Merits

Defendant seeks summary judgment on Counts I and II on the ground that Plaintiff's duty to defend claim is time barred under the Rhode Island statute of limitations. The Rhode Island statute applies, through operation of New York's "borrowing statute," because Rhode Island is where the cause of action accrued. *See* N.Y. C.P.L.R. § 202 ("An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued . . . .").[1] Defendant argues that under Rhode Island law, a cause of action for breach of the duty

---

[1] Under the New York borrowing statute, a claim by a non-resident accruing outside of New York must be timely under the limitations period of both New York and the state where the cause of action accrued. N.Y.C.P.L.R. § 201 (McKinney, Westlaw through L.2013). The parties do not dispute that plaintiff's claim for breach of the duty to defend is timely under New York's six-year statute of limitations, as New York law is clear that a cause of action for breach of a contractual duty to defend accrues when the underling litigation has been finally terminated. *See Ghaly v. First Am. Title Ins. Co. of N.Y.*, 644 N.Y.S.2d 770,771 (2d Dep't 1996).

to defend begins to accrue at the time of the breach, in this case no later than 1994, when Century declined to cover the costs of defense.  If the statutory period began to run in 1994 and concluded in 2004 under Rhode Island's 10-year statute of limitations, *see* R.I. Gen. Laws § 9-1-13(a), this suit, which was filed in 2011, would be time barred.

Defendant cites no Rhode Island law directly on point, and there appears to be none. "Where the substantive law of the forum state is uncertain or ambiguous, the job of the federal courts is carefully to predict how the highest court of the forum state would resolve the uncertainty or ambiguity."  *Travelers Ins. Co. v. 633 Third Assocs.*, 14 F.3d 114, 119 (2d Cir. 1994).  This Court concludes that the Rhode Island Supreme Court likely would follow the majority view and reasoning of most other state courts and hold that the statute of limitations first begins to run on the date of final judgment and not the date on which the insurer initially refused to defend.  The underlying litigation here was finally determined on October 12, 2006, and consequently Plaintiff's claim is timely.

According to one commentator, the majority of state courts have held that an insured's cause of action for breach of the duty to defend accrues, for purposes of commencing the limitations period, upon a final judgment against the insured for at least three sound reasons:

> [1.] Some have held that because the standard no-action clause prohibits an action on the contract until the insured's liability has been determined, a cause of action for breach of the duty to defend cannot accrue until the underlying action is over. [2.] Others base their conclusion on the ground that the insurer has a continuing duty to defend that does not end until the underlying action is terminated.  [3.] Still others reason that only after the underlying action is terminated can the insured's damages be fully ascertained and thus the right of action is not complete until then.

3 Susan M. Popkin, Law and Practice of Insurance Coverage Litigation § 43:16.  A second commentator similarly stated:

> Although there is authority to the contrary, in an action by an insured against an insurer for refusal to defend, the insured's cause of action under general statutes of limitations accrues when judgment is obtained against the insured, as opposed to the date the insurer refused to defend, the date the insurer denies coverage, or the insured's payment of a compromise settlement.

Steven Plitt, et al., Couch on Insurance § 236:102, 3d ed.  One court, collecting the cases, characterized this view as "the clear majority rule."  *Wiseman Oil Co., Inc. v. TIG Ins. Co.*, 878 F. Supp. 2d 597, 602 (W.D. Pa. 2012).

To begin the statutory period when the insurer first declined to defend, as Defendant urges, would lead to absurd results.  The policy in this case contains a "no-action clause," which provides, "[n]o action shall lie against the Company . . . until the amount of the Insured's obligation to pay shall have been finally determined . . . ."  If that provision were enforced and the statute had run in 1994, the duty to defend would be completely nullified.  Plaintiff could not have brought this action until 2006 when the underlying judgment was final, but by then this action would already have been time barred.  That result is not consistent with any sensible legal principle.  *See Ginn v. State Farm Mut. Auto. Ins. Co.*, 417 F.2d 119, 122 (5th Cir. 1969) ("The true test, therefore, to determine when a cause of action accrued is to ascertain the time when the plaintiff could first have maintained his action to a successful result."); *Kielb v. Couch*, 149 N.J. Super. 522, 529 (N.J. Super. Ct. Law Div.  1977) (holding that an insured's action did not accrue until the "totality of his claim against defendant was ascertainable" because until that point the insured could not "successfully withstand a defense based upon the 'no-action' clause in the policy").  Moreover, it would be discordant for the statutory period to end while Plaintiff was still actively engaged in litigation, which Century had a continuing duty to defend.  Not until the end of the litigation was Plaintiff's claim fully ascertainable and quantifiable.  *See Kielb*, 149 N.J. Super. at 529.

8

Defendant argues that in Rhode Island a cause of action for breach of contract accrues at the time of breach itself, and that therefore an action for the breach of the duty to defend accrues at the time of breach.  In Rhode Island, in a typical contract case, the cause of action accrues when there is sufficient notice to make a claimant aware of a breach.  *See Boghossian v. Ferland Corp.*, 600 A.2d 288, 290 (R.I. 1991); *see also Gail Frances, Inc. v. Alaska Diesel Elec., Inc.*, 62 F. Supp. 2d 511, 515 (D.R.I. 1999) ("[t]he cause of action accrues at the time of the breach itself . . .").  However, the accrual date for a typical breach of contract does not necessarily bear on the date of accrual for a breach of the duty to defend.  Many states apply Rhode Island's rule to a typical breach, but not to the duty to defend.  *Compare, e.g., Ely-Cruikshank Co., v. Bank of Montreal*, 81 N.Y.2d 399, 402 (1993) *with Ghaly v. First Am. Title Ins. Co. of New York*, 644 N.Y.S.2d 770, 771 (2d Dep't 1996); *see also Vigilant Ins. Co. v. Luppino*, 352 Md. 481, 489-90(1999) (distinguishing between a typical contract case and the duty to defend); *Brannon v. Cont'l Cas. Co.*, 137 P.3d 280, 285 (Alaska 2006) (same).  In a recent insurance case, in a much different setting, the Rhode Island Supreme Court rejected a "hurry up and wait" approach similar to the one that Century proposes for this action.  *Am. States Ins. Co. v. LaFlam*, 69 A.3d 831, 843-44 (R.I. 2013) (refusing to set the accrual date of an underinsured motorist claim at the time of accident rather than at the final date of judgment in the underlying tort action with an underinsured motorist).

The Court sees no reason why Rhode Island would be an anti-majoritarian state in setting the date of accrual for the duty to defend.  Thus, the ten-year statute of limitations on Count II began to run in 2006.  This suit was filed in 2011 and is timely.  Defendant's statute of limitations defense is without merit.

**C.  Allocation of Defense Costs Under Massachusetts Law**

Defendant argues that its liability to Plaintiff for defense should be limited by applying the pro rata, rather than joint and several, allocation method.  The applicable law in this case is Massachusetts law, as Judge Castel previously held.  921 F. Supp. 2d 166.  Massachusetts has not decided this issue.  As stated above, the job of a District Court is to apply the law of the relevant state as the highest court in that state would.  *Travelers*, 14 F.3d at 119.  Because the policy language here obligates the insurer to defend any suit, and the duty to defend is broader than a contractual duty to indemnify, this Court predicts that the Massachusetts Supreme Judicial Court ("SJC") would allocate defense costs jointly and severally in determining Plaintiff's damages for breach of the duty to defend.

At issue is whether Plaintiff's recovery of defense costs from Defendant should be based on a pro rata allocation of damages among the various insurers or based on a joint and several allocation.  Defendant argues the former, and Plaintiff argues the latter.  The pro rata method makes the Defendant responsible to Plaintiff only for its pro rata share of the loss suffered during the policy term as compared with other insurers.  The joint and several method requires the Defendant to pay for all of the defense costs, and then seek contribution from the other insurers. *See Boston Gas Co. v. Century Indem. Co*., 454 Mass. 337, 352 (2009).  The pro rata approach places the risk and burden on the insured to seek payment from other insurers, while the joint and several approach places that burden on the insurer.

The analysis must begin with *Boston Gas* in which the SJC adopted the pro rata approach to liability allocation for indemnification costs, but did not reach the question of defense costs because the contract specifically provided for the sharing of defense costs among insurers.  454 Mass. at 358 n.33.  *Boston Gas* expressly distinguished its holding from *Emhart Indus., Inc., v.*

*Century Indem. Co*., 559 F.3d 57 (1st Cir. 2009) (applying Massachusetts law), a case that had addressed the duty to defend:

> [T]he *Emhart* case is distinguishable because it involved allocation of defense costs, while this case involved allocation of indemnity costs.  *See Emhart Indus., Inc., v. Century Indem. Co*., at 70, 72 ("there is *no connection* between limiting coverage by the policy period and the amount of defense costs").

*Boston Gas,* 454 Mass. at 366. n. 38 (emphasis in original).  The reasoning of *Boston Gas* is thus persuasive on the issue of defense costs but not determinative.

 *Boston Gas* applied a three-part analysis and looked to the policy language, the reasonable expectations of the parties, and public policy.  The SJC in *Boston Gas* began with an interpretation of the contract, applying well-established principles of contract law.  "The interpretation of an insurance contract is a question of law."  *Boston Gas Co.* at 355-56 (internal citation omitted).  "It is no different from the interpretation of any other contract, and we must construe the words of the policy in their usual and ordinary sense."  *Id.*  "We read the policy as written and are not free to revise it or change the order of the words."  *Id.* (internal quotation marks omitted).  "Every word in an insurance contract must be presumed to have been employed with a purpose and must be given meaning and effect whenever practicable without according undue emphasis to any particular part over another."  *Id.* (internal citation omitted).  The SJC held that based on the parties' contractual language, which is common in commercial comprehensive general liability policies, a pro rata allocation of indemnity costs was appropriate. 454 Mass. at 358-366.

 Century, also a defendant in that case, "promised to indemnify Boston Gas for the 'ultimate net loss' that it became 'legally obligated to pay as damages because of . . . property damage . . . to which this policy applies, caused by an occurrence' . . . 'which occurs anywhere during the policy period.'"  454 Mass. at 358 (emphasis removed).  That language, within the

larger context of the entire agreement, led the SJC to conclude that Century had contracted to pay only for damages caused during its policy period, and therefore was not obligated to pay for damages that had occurred during other insurers' policy periods.

The SJC further observed, "we doubt that an objectively reasonable insured reading the relevant policy language would expect coverage for liability from [multi-year pollution] damages occurring outside the policy period." *Id.* at 362-63.  The policy did not imply coverage for property damages that occurred outside of the policy period, and any reasonable insured that purchased successive insurance policies should have understood that "each policy covered it only for property damage occurring during the policy year." *Id.* at 363.

In addition to construing the language of the contract and analyzing the reasonable expectations of the parties, the SJC observed that its holding "also serves important public policy objectives." *Id.* at 364.  First, the SJC held that the joint and several allocation method for indemnification costs is not efficient, because it does not solve the problem of allocation among insurers, but merely postpones the decision to a contribution action.  *Id.*  Second, the SJC held that the joint and several method may result in injustice if an insurance company is forced to pay for the costs of a bankrupt insurer.  It is the insured, and not the insurer, who chose that insurance company and should bear the risk of default.  *Id.* at 365.  Third, joint and several allocation would force an insured to absorb losses for periods where an insured has elected to be self insured. The result would be to create "a false equivalence between an insured who has purchased insurance coverage continuously for many years and an insured who has purchased only one year of insurance coverage." *Id.*  A further consequence would be to disincentivize an insured to purchase insurance coverage continuously and thus reduce the assets available to insurance companies to manage insurance risks.  *Id.*  Taken together, according to the SJC, the

pro rata allocation for liability "promotes judicial efficiency, engenders stability and predictability in the insurance market, provides incentive for responsible commercial behavior, and produces an equitable result." *Id.* at 366.

Century argues that the reasoning of *Boston Gas* should be extended to apply to the allocation of defense costs in an action for breach of the duty to defend, and not only indemnity costs. Century contends that *Boston Gas* relied heavily on allocation decisions from Vermont, New Hampshire, and New Jersey, and so would follow its sister states in treating the allocation of defense costs and indemnity costs the same. *See Towns v. Northern Sec. Ins. Co.*, 184 Vt. 322, 345 (2008); *Owens–Illinois, Inc. v. United Ins. Co.*, 138 N.J. 437, 474–477 (1994); *EnergyNorth Natural Gas, Inc. v. Certain Underwriters at Lloyd's*, 156 N.H. 333, 341 (2007). While geographically close to Massachusetts, there is nothing about proximity to suggest that Massachusetts would hold the same way on defense costs as Vermont, New Hampshire, and New Jersey. Also, the cited decisions of those courts typically treated defense costs as an afterthought to the liability decision, and did not analyze the differences rigorously. In New York, for example, also a state with geographical proximity to Massachusetts, the Court of Appeals allows for joint and several allocation of defense costs, but in a factual setting similar to this one held that indemnification costs should be allocated pro rata. *See Consol. Edison Co. of New York, Inc. v. Allstate Ins. Co.*, 98 N.Y.2d 208, 223-24 (2002) (holding that indemnity should be allocated pro rata); *Cont'l Cas. Co. v. Rapid-Am. Corp.*, 80 N.Y.2d 640, 655 (1993) (finding that the duty to defend is broader than the duty to indemnify in allowing joint and several liability for defense costs).

Massachusetts, like New York, is unlikely to treat the duty to defend in this policy in the same way that it treats the duty to indemnify as established in *Boston Gas*. First, the policy

language for the duty to defend in this case is broader than the indemnity provision here or in *Boston Gas*. Second, the duty to defend is broader under applicable legal principles than the duty to indemnify and is subject to the "complete defense" rule. Third, the policy reasons that *Boston Gas* relied on in determining the allocation method for liability are not as applicable to the duty to defend.

### i. The Policy Language

The duty to defend language in the contract here supports using the joint and several allocation method, in contrast to the indemnity language in the policies both here and in *Boston Gas*:

> The Company [Century] will pay on behalf of the Insured <u>all sums which the Insured shall become legally obligated to pay</u> as damages because of . . . property damage as to which this insurance applies, caused by an occurrence and the Company shall have the <u>right and duty to defend any suit</u> against the Insured seeking damages on account of such … property damage, even if any of the allegations of the suit are groundless, false, or fraudulent . . . .

921 F. Supp. 2d at 171. The policy language limits, as it did in *Boston Gas*, indemnification liability to "all sums" the insured must pay as a result of "property damage . . . caused by an occurrence." Similar limiting language was key to the SJC's decision in *Boston Gas* concerning indemnification liability. 454 Mass. at 358. The next clause, which establishes the duty to defend, is broader. The "right and duty" to defend exists for "any suit" that seeks damages for "property damage . . . caused by an occurrence."

"Any suit" is broad and applies only to the duty to defend. A reasonable interpretation of that language is that, if a suit makes more than one claim, and only one claim is seeking damages on account of covered "property damage" under the policy, the insurer is obligated to defend the entire suit. *See Doe v. Liberty Mut. Ins. Co.*, 423 Mass. 366, 369 (1996) (applying the duty to defend based upon the Court's interpretation of the duty to defend clause); *Trs. of Tufts Univ. v.*

14

*Commercial Union Ins. Co.*, 415 Mass. 844, 848 (1993) ("The plain language of the policy terms, therefore, indicates that the insurers had a duty to defend Tufts in these claims.").  As noted in *Boston Gas*, any ambiguities in an insurance contract are "interpreted against the insurer who used them and in favor of the insured." 454 Mass. at 365.  Reading the contract pursuant to the relevant principles of contract interpretation suggests that Massachusetts would hold insurers jointly and severally liable as to the duty to defend.

### ii.  The Duty to Defend in Contrast to the Duty to Indemnify

The duty to defend has unique characteristics that distinguish it from the duty to indemnify and that warrant application of the joint and several allocation method.  As discussed in detail below, the critical difference is that the duty to defend is triggered at the commencement of the case based on the allegations in the complaint.  An insurer must defend the entire action if any claim appears to be covered.  In contrast, the duty to indemnify is based on liability, which is determined at the end of the case and is limited to covered claims.  An insurer that breaches either duty is required to place the insured in the position it would have been in had the insurer performed.  Thus, damages for breach of the duty to defend should be the cost of defending the entire action up to the aggregate policy limit.  Only the joint and several method, not the pro rata method, is consistent with this measure of damages.

In *Boston Gas*, the SJC made clear that the analysis for indemnification costs and defense costs is distinct.  *See* 454 Mass. at 366 n.38 (distinguishing *Emhart* "because it involved allocation of defense costs, while this case involved allocation of indemnity costs").  The duty to defend is "independent from, and broader than" the duty to indemnify.  *A.W. Chesterton Co. v. Mass. Insurers Insolvency Fund*, 445 Mass. 502, 527 (2005).  "[A]n insurer may owe a duty to

defend its insured in an action in which no damages ultimately are awarded." *Doe*, 423 Mass. at 368.

The duty to defend is "antecedent to . . . the duty to indemnify." *Boston Symphony Orchestra, Inc. v. Commercial Union Ins. Co.*, 406 Mass. 7, 10 (1989). The duty to defend, therefore, is not determined by "reference to the facts proven at trial." *Id.* Instead, the duty to defend is based solely on "facts alleged in the complaint and those facts which are known by the insurer." *Id.* at 11; *see also Metro. Prop. and Cas. Ins. Co. v. Morrison*, 460 Mass. 352, 357 (2011). In contrast, "[t]he issue of indemnification must await the completion of trial." *Newell-Blais Post #443 v. Shelby Mut. Ins. Co.*, 396 Mass. 633, 638 (1986).

The insurer has a duty to defend when the Complaint could be reasonably construed to state a covered claim. *Liberty Mut. Ins. Co. v. SCA Servs., Inc.*, 412 Mass. 330, 331-32 (1992). Because many lawsuits assert both covered and uncovered claims, "an insurer must defend the entire lawsuit if it has a duty to defend any of the underlying counts in the complaint." *GMAC Mortgage, LLC v. First Am. Title Ins. Co.*, 464 Mass. 733, 738 (2013) (internal citations omitted); *see also Simplex Techs., Inc. v. Liberty Mut. Ins. Co.*, 429 Mass. 196, 199 (1999) ("That some, or even many, of the underlying claims may fall outside the coverage does not excuse [the insurer] from its duty to defend these actions."). This is known as the "in for one, in for all" or the "complete defense" rule. *GMAC*, 464 Mass. at 738.

Even when an insurer eventually obtains a declaration that it has no duty to defend – which is not the case here – the insurer cannot recoup what it has already paid in defense of an action, because a declaratory judgment "only relieves the insurer of the obligation to continue to defend after the declaration." *Metro. Prop. & Cas. Ins. Co.*, 460 Mass. 352, 359 (internal quotation marks and citations omitted). "Where material facts as to the duty to indemnify are in

dispute, an insurer has a duty to defend until the insurer establishes that no potential for coverage exists." *Id.*

When a party is found liable for breach of the duty to defend, the general rule in Massachusetts is that the insurer is liable for all defense costs and, in the event a claim is covered, the entire resulting judgment or settlement, unless the insurer can prove the allocation among covered and uncovered claims. *Liquor Liab. Joint Underwriting Ass'n of Mass. v. Hermitage Ins. Co.,* 419 Mass. 316, 323 -24 (1995); *Palermo v. Fireman's Fund Ins. Co.,* 42 Mass. App. Ct. 283, 289-91  (1997) (holding that insurer breached its duty to defend in providing insured only a partial defense); *Liberty Mut. Ins. Co. v. Metro. Life Ins. Co.*, 260 F.3d 54, 63 (1st Cir. 2001).

Although an insurer has a duty to the insured to provide the plaintiff a complete defense as to all the claims in a suit, the insurer may seek contribution from other insurers for both indemnification and defense costs. *See Rubenstein v. Royal Ins. Co.,* 44 Mass. App. Ct. 842, 852 (1998).  The issue here is not how defense costs should be allocated among insurers *inter se* in a contribution action.   Rather, in deciding between the joint and several method and the pro rata method, the issue is whether the insured or the insurer who has breached the duty to defend must bear the risk and burden of collecting from other insurers.

A breach of the duty to defend "is a breach of the insurance contract, and the insured is entitled to contract damages caused by the breach."  *Metro. Prop. & Cas. Ins. Co.*, 460 Mass. at 359.  The standard measure of damages for breach of contract is that the "injured party should be put in the position they would have been in had the contact been performed." *Situation Mgmt. Sys., Inc. v. Malouf, Inc.*, 430 Mass. 875, 880 (2000).

Application of the pro rata method here would undermine this basic principle of contract law because an insurer would be obligated to pay for the entire cost of defense if it honored its duty to defend, but could reduce that obligation to its pro rata share if it breached the duty.  That would be a perverse result and one that is not supported by the case law, which requires the insurer to provide a complete defense based on the allegations in the Complaint.

The U.S. District Court for the District of Massachusetts, applying Massachusetts law, addressed the issue raised here and declined to extend *Boston Gas* to the duty to defend. *Peabody Essex Museum, Inc. v. U.S. Fire Ins. Co.*, 06 Civ. 11209, 2010 WL 3895172, at *15 (D. Mass. Sept. 30, 2010).  The Court maintained the logic of the complete defense rule and reasoned that, "[i]f an insurer cannot charge [the insured] for a portion of defense costs when it incidentally provides a benefit for uncovered claims, it should not be able to escape part of its responsibility for covered claims."  *Id*.

Century argues that *Peabody* is inapplicable because it "was premised on authority dealing with multiple claims arising out of a single incident, in which case the ability to reasonably apportion defense costs is not readily apparent."  This distinction is unconvincing -- first because the ease of computation is not an important reason for applying the joint and several method, and second because assigning pro rata shares among the insurers in this case also is not necessarily a simple task.  The principal reason to apply the joint and several method to the duty to defend is that Narragansett was entitled to a "complete defense" of the claim that fell within the policy period, and Century had a duty to defend "any suit" in which such a claim was made.

### iii.  Policy Reasons

In *Boston Gas*, the SJC discussed public policy reasons that indemnification costs should be apportioned pro rata.  The policy reasons that the SJC discussed to apportion indemnity costs are less compelling to a case for the recovery of defense costs.

The first policy reason the SJC discussed was that joint and several liability merely postpones the allocation decision for adjudication in a separate case, and is therefore judicially inefficient.  454 Mass. at 364.  Second, the SJC observed that the insured should bear the credit risk associated with attempting to collect from the other insurers, because the insured selected the other insurers and was in the best position to avoid an insurer likely to default.  *Id.* at 365. Both of these considerations address when and how contribution will be sought from other insurers.  With regard to the duty of defend, in contrast to the duty to indemnify, these considerations are trumped by the need to provide the insurer the benefit of its bargain to obtain a complete defense from the outset of a lawsuit that includes a covered claim.  It would be unfair to place on the insured the burden and risk of seeking recovery for defense costs from other insurers when it bargained for and was "entitled to a full and complete defense from every insurer having a duty to defend." *Rubenstein*, 44 Mass. App. Ct. at 849; *cf. Aetna Cas. & Sur. Co. v. Cont'l Cas. Co.*, 413 Mass. 730, 732 (1992) (allocating costs between two insurers that had the duty to defend by, *inter alia*, comparing "other insurance" provisions of respective policies).  In contrast, the insured bargains for indemnification only of damages awarded on covered claims after a final adjudication.

Third, the SJC expressed concern that only the pro rata method holds policy holders responsible for defense costs attributable to an insured's decision to self insure.  Joint and several liability could reduce the incentive for property owners to purchase insurance continuously rather

than sporadically, with negative consequences.  454 Mass. at 365-66.  Adopting the pro rata method for indemnification liability, which the SJC has done, should address this issue.  Often (though not this case), indemnification liability dwarfs defense liability, and insurers presumably will be motivated to continue coverage from year to year in light of the *Boston Gas* holding applying the pro rata method to indemnity recovery.

Finally, a policy reason to apply the joint and several method to defense costs is that to do so would encourage insurers to honor their contractual obligation to assume the defense.  An insurer has more control over its exposure to defense costs than indemnity costs; an insurer that exercises its right, and honors its duty to assume the defense can control both the extent and duration of defense costs.  921 F. Supp. 2d 171 ("the Company shall have the right and duty to defend any suit against the Insured").  In contrast, an insurer has little, if any, control over its indemnification exposure once the policy is written.

### iv.  **Contribution from Other Insurers and Narragansett as a Self Insured**

In arguing that defense costs should be allocated pro rata, Century notes that Narragansett was self insured for periods in which the contamination occurred.  Although Century may recover contribution from other insurers, the joint and several method does not allow for contribution from Narragansett for the period it was self insured.  The joint and several approach provides the insured with "a complete defense," which means without regard to the pro rata shares of other insurers or the insured.  The SJC in *Boston Gas* acknowledged as much in its discussion of the incentives to purchase insurance continuously, when it noted that joint and several liability for indemnity would provide complete indemnity coverage for all claims.  454 Mass. at 365-66; *accord Celanese Corp. v. OneBeacon Am. Ins. Co.*, No. 06-1625, 2008 WL 5784444, at *8 (Mass. Super. Dec. 29, 2008) (citing *Continental Cas. Co. v. Rapid–American*

*Corp.*, 80 N.Y.2d 640 (1993)) (holding that an insurer may seek contribution from other insurers with the duty to defend, but not from a self insured). Under the joint and several method, Century is not entitled to an offset or other reduction in its liability because of any period of Narragansett's self insurance.

## D. Third Party Contribution and Broadly Beneficial Actions

Century argues that, even if the joint and several method is adopted, Narragansett should not be able to recover its full attorneys' fees because it pursued an aggressive strategy that would help it defend itself globally against CERCLA claims in other suits for which Century has no coverage liability. Century also contends that Narragansett should not be able to recover defense costs for a third-party action it instituted against Stone & Webster. The Court agrees with Century in part. Narragansett is not entitled to collect some of the fees expended in the third-party action against Stone & Webster, but may recover defense costs that incidentally may have benefitted Narragansett in other actions.

Once again the SJC has not squarely addressed these issues, and the case law bearing on it is sparse. The Massachusetts Superior Court, in two separate cases, held that where a contribution action is "inextricably intertwined with his defense," then an insurer owes a duty to defend. *Wasserman v. Commerce Ins. Co.*, No. 010619B, 2002 WL 31187681, at *9 (Mass. Super. July 9, 2002) (citing *Safeguard Scientifics, Inc. v. Liberty Mutual Ins. Co.*, 766 F. Supp. 324, 333-34 (E.D.Pa.1991)); *Nashua Corp. v. Liberty Mut. Ins. Co.*, No. 94 Civ. 2227A, 1997 WL 89163, at *8 (Mass. Super. Feb. 18, 1997). Other courts have explained that insurers must pay defense costs for suits that "defeat or offset liability" in the underlying claim. *TIG Ins. Co. v. Nobel Learning Cmtys., Inc.*, No. 01 Civ. 4708, 2002 WL 1340332, at *14 (E.D. Pa. June 18, 2002); *see also Great W. Cas. Co. v. Marathon Oil Co.*, 315 F. Supp. 2d 879, 882 (N.D. Ill.

2003) (the general rule is that insurers must pay defense costs in cases that are defensive in nature and seek to limit liability).

The duty to pay defense costs in cases that are "defensive" stand in contrast to offensive claims that do not seek to limit liability.  *See Amquip Corp. v. Admiral Ins. Co.*, No.03 Civ. 4411, 2005 WL 742457 (E.D. Pa. Mar. 31, 2005) (refusing to order insurer to pay defense costs when offensive suits were launched for strategic reasons and not to limit liability).  The Massachusetts District Court held in one case that, while the duty of defend is broad, "there are limits to the insurer's obligation. . . . [It] does not encompass lawsuits launched offensively." *Barletta Heavy Div., Inc. v. Travelers Ins. Co., Inc.*, No. 12 Civ. 11193, 2013 WL 5797612, at *10 (D. Mass. Oct. 25, 2013) (applying Massachusetts law).  Extending coverage to voluntary suits initiated by the insured "would risk spawning marginal litigation" and an insured "could reap the benefits of success . . . while transferring the costs of an otherwise predictably unsuccessful suit onto its insurer."  *Id.*  According to that Court, the plain language of the "duty to defend" provision in the policy "suggests that [it] is limited to defending against claims and does not encompass lawsuits launched offensively."  *Id.*

Although none of these cases speaks the views of the SJC, a line appears to be drawn between "inextricable" actions that seek to limit liability and strategic, offensive actions.  In this case, Blackstone brought a contribution action against Stone & Webster, that initially sought only to lower Blackstone's CERCLA liability at the Mendon Road site, but morphed into something broader when Stone & Webster filed for bankruptcy.  In the bankruptcy, the litigation included all claims between Blackstone and Stone & Webster, and Blackstone settled all of the claims collectively.  It would be unfair to deny Narragansett, as successor to Blackstone, any defense costs for a claim that pursued contribution in an effort to reduce liability at the Mendon

Road site.  It also would be unfair to allow Narragansett to recover all costs for that defense, which morphed into a broader action for which it received a settlement that was larger in scope than claims related to the Mendon Road site.  Narragansett accordingly is required to pay its own costs in the Stone & Webster bankruptcy action.

Century's defense liability does, however, include Narragansett's cost of pursuing a defense strategy that had collateral benefits in other CERCLA suits regarding FCC.  The First Circuit, applying Massachusetts law and the complete defense rule prior to *Boston Gas*, observed that it would not make sense to deny defense costs to an insured merely because a complete defense on a covered claim provided it some benefit in another case.  *See Liberty Mut. Ins. Co.*, 260 F.3d  at 64 ("so long as those costs were necessary for covered claims in the Washington suit, the fact that the research and discovery might be useful in some later case would hardly defeat full recovery.").

Century's objection here elucidates the reason for the complete defense rule: a defense of an action with both covered and uncovered claims may benefit from a unified defense and legal arguments, and it is illogical to separate them based on insurance coverage.  *See GMAC*, 464 Mass. at 738 ("dividing representation between covered and noncovered claims is impractical.").  Century had the *right* to defend Narragansett in the underlying action.  Had it elected to do so, it could have pursued whatever strategy it thought most prudent, and balanced the overall liability against the defense costs incurred.  Century cannot abdicate its duty to defend and now second-guess the defense it declined to undertake.  *See Chicago Ins. Co. v. Lappin*, 58 Mass. App. Ct. 769, 783 (2003) (citing *Magoun v. Liberty Mut. Ins. Co.*, 346 Mass. 677, 685 (1964)).

**E.  Litigation Costs for This Action**

Century seeks to exclude from Narragansett's damages the costs Narragansett incurred in this action.  Because Century has continued to litigate the duty to defend through this stage in the litigation, it owes Narragansett all of its litigation costs in this suit, up to and including its efforts on this motion, as well as possible future costs.

In a typical litigation, each side must pay its own expenses.  *See Wilkinson v. Citation Ins. Co.*, 447 Mass. 663, 669 (2006).  In Massachusetts, an exception to that rule is an action where "an insured successfully establishes an insurer's duty to defend."  The insurer must bear the insured's litigation costs in such an action.  *Id.*  Century argues that once the duty to defend is established by declaration, then from that point forward the insurer is not obligated to pay any legal fees incurred in the duty to defend action.  Century relies on *Global Investors Agent Corp. v. Nat'l Fire Ins. Co. of Hartford*, 76 Mass. App. Ct. 812, 828 (2010), which held that the insurer did not owe the insured legal fees once the insured "received the favorable ruling on their partial summary judgment motion, which established the defendants' duty to defend."  *Id.* (internal quotation marks omitted).  Here, because Century continued to challenge its duty through this motion, it cannot claim that its duty to defend was fully established before this opinion.

Even if Century had already accepted its duty to defend, and the amount of defense costs owed were the only issue to be litigated, *Global Investors* did not create the rule Century argues it did.  First, *Global Investors* is an intermediate appellate decision and not a holding of the SJC.  Second, the SJC cases addressing the issue used broad language encompassing the entire action, and did not cut off attorneys' fees at a particular point in the action.  *See Rubenstein v. Royal Ins. Co. of Am.*, 429 Mass. 355, 360 (1999) ("[the insured] are entitled to an award of the reasonable attorney's fees and expenses incurred in the declaratory judgment action."); *Wilkinson*, 447 Mass.

at 670 ("*Gamache* and *Rubenstein* establish that, to be entitled to collect attorney's fees expended in connection with duty to defend litigation, the insured need only show that the insurer was obligated to undertake the defense of the case.").  Third, the SJC established this exception to the typical rule of litigation costs based on the "well-established principle" that the "liability insurer's duty of defense is so extensive" that the "the insurer should not enjoy the usual freedom to litigate."  *Preferred Mut. Ins. Co. v. Gamache*, 426 Mass. 93, 96 (1997) (internal quotation marks omitted).  If the insurer could force the insured into litigation to enforce the duty to defend, and force the insured to bear the costs of that litigation, then the insured would be "no better off financially" than if the duty to defend did not exist.  *Id.* at 97.  It would pervert that reasoning to allow Century, having been found in breach of its duty to defend, to continue to litigate the scope of its duty without facing liability for the costs of the action.   As long as Century continues to contest the extent of its defense costs in this action, it will owe Narragansett the reasonable costs of pursuing its claim.

**F.  Reasonability of Defense Costs**

Narragansett asserts that the defense costs it incurred are presumptively reasonable and may be awarded on summary judgment.  Century does not object to the "reasonableness of the rates charged."  Accordingly, the fees are awarded at the rates and hours presented, consistent with the prior rulings contained in this opinion.

**IV.  Conclusion**

Century is obligated to pay all defense costs incurred by Narragansett defending the Massachusetts action and the Stone & Webster Massachusetts action, but not the Stone & Webster bankruptcy.  Plaintiff shall submit, if possible on consent of Defendant, a proposed final order and judgment consistent with this order and opinion by **February 28, 2014.**

The Clerk of the Court is directed to close the motions at Docket Nos. 136 and 152.


Dated: February 18, 2014
      New York, NY




                                           LORNA G. SCHOFIELD
                                 UNITED STATES DISTRICT JUDGE